**EXHIBIT REFERENCE PAGE**

Case: 1:19-cv-01342 (Jury Demand)
Assigned To : Contreras, Rudolph
Assign. Date : 5/8/2019
Description: Pro Se General (F-DECH

**Exhibit A**: Medical center injury report and diagnosis (summary page)
Received on: 7/16/18, prior to the police use of excessive force occurrence.
Description: The plaintiff, Kedrick Randle incurred injuries during a vehicle accident in West Valley City, Utah. The driver of the other vehicle was cited for the accident.

**Notation**: This exhibit is only included to describe a physical injury the plaintiff was experiencing on the morning of 7/17/18.

**Exhibit A1**: The suggested pain medication prescription for the vehicle accident.
Prescribed on 7/16/18, prior to the police use of excessive force occurrence.

**Notation**: In the West Valley City, Utah 7/17/18 police incident report the uniformed police officers state concerns about substance influence. But, this Oxycodone pain medication prescription was never filled or attained.

**Notation**: This document is only included to describe the plaintiff, Kedrick Randle's mindset in reference to impairment in correlation with vehicle occupancy and operation.

**Exhibit B**: The 4/17/18 registration document for Kedrick Randle's vehicle. One the morning of 4/17/18 this document was located inside of Kedrick Randles vehicle and available upon request.

**Exhibit B1**: An example of the 4/17/18 (time period) temporary registration tag for Kedrick Randles vehicle. On 4/17/18 this tag was unobstructively displayed in the rear window of the vehicle, on the driver's side. No adverse weather conditions were present at the scene of occurrence to limit visibility.

**Notation**: In the West Valley City police incident report the first uniformed police officer to arrive at the scene of occurrence (Stephen Parker) states that he did not find the temporary tag until searching Kedrick Randle's vehicle. But, in the introduction of his report he describes arriving at the scene, circling Kedrick Randle's vehicle, parking behind Kedrick Randle's vehicle, and approaching the Kedrick Randle's vehicle on the driver's side.

RECEIVED
MAY 09 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**Exhibit B2**:   The 4/17/18 insurance document for Kedrick Randle's vehicle. On 4/17/18 this document was located inside of Kedrick Randle's vehicle and available upon request.

**Exhibit C**:  The West Valley City Police 4/17/18 incident report (reference number          ). Three separate uniformed police officer reports.  Stephen Parker (3) pages,  Kevin Barrett (2) pages, Justin Wyckoff (2) pages.

**Notation**:  There are uniformed police officer body camera videos of this 4/17/18 occurrence. I can order a video disk for court records.  I, the plaintiff Kedrick Randle did not have a secure location to store the video disk.

**Exhibit D:** Medical center injury report and diagnosis (summary page).
Received on: 7/18/18, following the police use of excessive force occurrence.
Description: Injuries caused by uniformed police officers and associated personnel in West Valley City, Utah.

**Jordan Valley Medical Center West Valley Campus**
3460 South Pioneer Parkway    West Valley City, UT, 84120-204
(801) 964-3100

**RANDLE, KEDRICK**

GENERAL DELIVERY, MAGNA, UT 840449999

Gender: Male                               DOB: 08/07/1979

Phone: (385)285-0556          Date: July 16, 2018

Percocet 7.5 mg–325 mg oral tablet

1 tabs Oral q4hr–int for 3 days PRN as needed for pain

Dispense: 15 (fifteen) tablet(s)

Refills: No Refills  Indications:

Special Instructions:

First fill Date:

Diagnosis:

_____  ☐ Dispense as Written
Prescriber Signature

Flammer, DO, Brandon M        DEA: FF3129663
                              DEA:

--VOID--

--VOID--

--VOID--

# Jordan Valley Medical Center, West Valley Campus Emergency Department
### 3460 South 4155 West, West Valley City, UT 84120
### (801) 964-3100
### Discharge Instructions (Patient)

**Name:** RANDLE, KEDRICK
**DOB:** 08/07/79      **MRN:** 1200721970      **FIN:** JVW-20000023619
**Reason For Visit:** Pain in back; Motor vehicle crash - minor; back pain/mva
**Final Diagnosis:** 1:Lumbar transverse process fracture

**Visit Date:** 07/16/18 02:21:00
**Address:** GENERAL DELIVERY MAGNA UT 840449999
**Phone:** (385)285-0556

**Primary Care Provider:**
  **Name:**
  **Phone:**

**Emergency Department Providers:Primary Physician:**
**Flammer, DO, Brandon M**

Jordan Valley Medical Center, West Valley Campus would like to thank you for allowing us to assist you with your healthcare needs. The following includes patient education materials and information regarding your injury/illness.

**Follow-up Instructions:** You were treated today on an emergency basis, it may be wise to contact your primary care provider to notify them of your visit today. You may have been referred to your regular doctor or a specialist, please follow up as instructed. If your condition worsens or you can't get in to see the doctor, contact the Emergency Department.

| With: | Address: | When: |
|---|---|---|
| Min, MD, W. David | 3580 West 9000 South West jordan, UT 840888812 (801) 505-5370 | Within 5 to 7 days |

**Comments:**

Return to ED if symptoms worsen

*kathystewart@stewardhealth.org*

Division of Motor Vehicles
UTAH STATE TAX COMMISSION
210 North 1950 West   Salt Lake City, UT 84134
Telephone: 801-297-7780 or 1-800-DMV-UTAH

04/2018   atL067



# Vehicle Registration Certificate

**Expires Last Day Of:** May/2019

**Decal Number:** 190762121

**License Plate Number:** F123JG

### Vehicle Information

VIN: JH4DC54883C000562

Year: 2003   Make: ACUR   Model: RSX

Vehicle Type: Passenger Vehicle

Body Style: Hatchback 2 Door

Plate Type: LE Skier

Reg. Wt.

Cyl: 4

Fuel: Gasoline

Owners: KEDRICK T. RANDLE

CC   HP   Fleet Number   Fleet Unit Number

Emission Compliance: 15205091310

Safety Inspection:

---

**Transaction Date:** 06/04/2018

**Receipt** June 4, 2018

| Item | Amount |
|---|---|
| State Fee | $71.75 |
| County Fee | $13.00 |
|  | **$84.75** |

**Payment Type**
EZPay ECheck   $84.75

**Total Paid**   $84.75

---

**\*\*Insurance\*\***
Every owner of a motor vehicle operated on a highway, public road or parking area within the State of Utah is required to have in effect and maintain current owner's or operator's insurance for that vehicle as required by law.

**\*\*Vehicle Safety\*\***
Each motor vehicle owner is responsible for the safe operation of their vehicle. As part of this responsibility owners should inspect their vehicle's tires, brakes, steering, suspension, lights and other equipment to ensure the vehicle is in safe operating condition.

**\*\*Accessible Parking\*\***
State law prohibits persons who do not lawfully possess a disability placard or disability special group license plate from parking in an accessible parking space designated for persons with disabilities. Persons who possess a disability placard or disability special group license plate are discouraged from parking in an accessible parking space designated as van accessible unless they have a temporary wheelchair user placard or a wheelchair user placard.

**STATE OF UTAH**
**PROOF OF INSURANCE CARD**

Valid in U.S. and Canada

This Card Must Be Shown To Any Law Enforcement Officer Upon Request

BRISTOL WEST INSURANCE COMPANY          NAIC #19658

**POLICY NUMBER**      **EFFECTIVE DATE**      **EXPIRATION DATE**
G00 9103792 00          06/22/2018                  12/22/2018
           Not Valid More than One Year from Effective Date

**INSURED**
KEDRICK T RANDLE
**PRODUCER** 4300521       **PHONE:** 801-967-5544
Jaramillo, David
4360 S REDWOOD RD STE 2
SALT LAKE CITY UT 84123-2204

**YEAR**     **MAKE/MODEL**
2003          ACURA RSX
**VEHICLE IDENTIFICATION NO**
JH4DC54883C000562
         SEE IMPORTANT MESSAGE ON REVERSE SIDE



**BRISTOL WEST**
Part of the Farmers Insurance Group

Underwritten By: Bristol West Insurance Company

**WARNING:** Utah law requires motorists to carry proof of insurance and present it to any law enforcement officer upon request. If a person is convicted in a court or found through a Department of Public Safety (DPS) administrative hearing to have been operating a motor vehicle without insurance, the DMV may suspend the uninsured vehicle's registration. Failure to provide insurance or operator's security is a Class B misdemeanor, for which the fine may not be less than $400 for a first offense; and $1000 for a second and subsequent offense within three years of a previous conviction or bail forfeiture. If a person is convicted for failure to insure a vehicle, the Utah Department of Public Safety (DPS) is required to suspend the person's driver license.

Keep a copy of this card in each vehicle covered.

In the event of a loss, call us Toll-Free, 24 hours a day, from anywhere in the United States at : 1-800-274-7865

# Jordan Valley Medical Center, West Valley Campus Emergency Department
3460 South 4155 West, West Valley City, UT 84120
(801) 964-3100
Discharge Instructions (Patient)

**Name:** RANDLE, KEDRICK
**DOB:** 08/07/79          **MRN:** 1200721970          **FIN:** JVW-20000023957
**Reason For Visit:** Wrist pain-swelling; Back pain; S/P assault
**Final Diagnosis:** Encounter for medical screening examination; Finger sprain; Head injury

**Visit Date:** 07/18/18 00:23:00
**Address:** GENERAL DELIVERY MAGNA UT 840449999
**Phone:** (385)285-0556

**Primary Care Provider:**
  **Name:**
  **Phone:**

**Emergency Department Providers: Primary Physician:**
Flammer, DO, Brandon M

Jordan Valley Medical Center, West Valley Campus would like to thank you for allowing us to assist you with your healthcare needs. The following includes patient education materials and information regarding your injury/illness.

**Follow-up Instructions:** You were treated today on an emergency basis, it may be wise to contact your primary care provider to notify them of your visit today. You may have been referred to your regular doctor or a specialist, please follow up as instructed. If your condition worsens or you can't get in to see the doctor, contact the Emergency Department.

| With: | Address: | When: |
|---|---|---|
| Jody Stubler NP | 1345 East 4500 So, Salt Lake City, Ut 84101<br>3852754673 | Within 3 to 5 days |

**Comments:**

Alternate cold and warm wet packs to the area multiple times daily





MOTOR VEHICLE REGISTRATION   TC-137 Rev. 5/15

Characters must fill the squares. Use format MM-DD-YY with leading zeros (e.g., 01, 02, etc.) right column.

**CIRCLE DAY**

3-18

0 0
1 1
2 2
3 3
4
5
6
7
8
9

P46225

45 DAYS MAXIMUM



# West Valley City Police Department
Deputy Report for Incident 18I013267

---

**Nature:** SUSP VEHICLE  
**Location:** WVPD1  
**Address:** 3620 S 2400 W; MEGAPLEX WVC  
W VALLEY CITY UT 84119

---

**Offense Codes:** SUCR  
**Received By:** BUCHEI, DERREK  
**How Received:** O  
**Agency:** WVPD  
**Responding Officers:** PARKER, STEPHEN, ANDERSON, CODY, BARRETT, KEVIN, WYCKOFF, JUSTIN,  
ANDERSON, CODY, BARRETT, KEVIN, PARKER, STEPHEN, WYCKOFF, JUSTIN,  
ANDERSON, CODY, BARRETT, KEVIN, PARKER, STEPHEN, WYCKOFF, JUSTIN,  
ANDERSON, CODY, BARRETT, KEVIN, PARKER, STEPHEN, WYCKOFF, JUSTIN  
**Responsible Officer:**  
**Disposition:** CLO 07/17/18  
**When Reported:** 02:26:22 07/17/18  
**Occurred Between:** 02:26:22 07/17/18 and 02:26:22 07/17/18

---

**Assigned To:**  
**Detail:**  
**Date Assigned:** \*\*/\*\*/\*\*  
**Status:**  
**Status Date:** \*\*/\*\*/\*\*  
**Due Date:** \*\*/\*\*/\*\*

---

**Complainant:**  
**Last:**  **First:**  **Mid:**  
**DOB:** \*\*/\*\*/\*\*  **Dr Lic:**  **Address:**  
**Race:**  **Sex:**  **Phone:**  **City:**

## Offense Codes
**Reported:**  
**Observed:** SUCR Suspicious Circumstance  
**Additional Offense:** SUCR Suspicious Circumstance

## Circumstances
LT18 Parking Lot/Garage  
BM88 No Bias  
HOMC Homeless

**Responding Officers:** | **Unit:**
PARKER, STEPHEN | 8V823  
ANDERSON, CODY | 8V831  
BARRETT, KEVIN | 8V821  
WYCKOFF, JUSTIN | 8L8  
ANDERSON, CODY | 8V831  
BARRETT, KEVIN | 8V821  
PARKER, STEPHEN | 8V823

CERTIFIED RECORD
MAR 0 6 2018
WEST VALLEY POLICE

02/28/19

*Deputy Report for Incident 18I013267*  *Page 2 of 10*

| | |
|---|---|
| WYCKOFF, JUSTIN | 8L8 |
| ANDERSON, CODY | 8V831 |
| BARRETT, KEVIN | 8V821 |
| PARKER, STEPHEN | 8V823 |
| WYCKOFF, JUSTIN | 8L8 |
| ANDERSON, CODY | 8V831 |
| BARRETT, KEVIN | 8V821 |
| PARKER, STEPHEN | 8V823 |
| WYCKOFF, JUSTIN | 8L8 |

**Responsible Officer:**  
**Received By:** BUCHEI, DERREK  
**How Received:** O Officer Report  
**When Reported:** 02:26:22 07/17/18  
**Judicial Status:**  
**Misc Entry:**  

**Agency:** WVPD  
**Last Radio Log:** **:**:** **/**/**  
**Clearance:**  
**Disposition:** CLO **Date:** 07/17/18  
**Occurred between:** 02:26:22 07/17/18  
**and:** 02:26:22 07/17/18  

**Modus Operandi:**          **Description:**          **Method:**

## Involvements

| Date | Type | Description | Relationship |
|---|---|---|---|

### Narrative

A suspicious male was located sleeping in the parking lot of the Mega Plex Theater. Ultimately the male was determined to have been suffering from mental disabilities and was allowed to sleep in his vehicle. This case is closed.

_____

Responsible LEO:


_____

Approved by:


_____

Date

## Supplement

```
Parker 8500 Initial Report
18I013267
7/17/18
```

Details

On today's date, I observed a suspicious vehicle in the east parking lot of Valley Fair Mall and observed a male sleeping in the driver seat. My body worn camera was active during the investigation, and this report is done to the best of my knowledge.

Investigation

At approximately 0226 hours, while proactively patrolling the parking lot of Valley Fair Mall, I observed a vehicle parked suspiciously in the east side of the parking lot near the Megplex theater. The vehicle was a silver Acura with no license plate. I circled the vehicle and did not see any occupants. I then pulled up behind the vehicle and exited my patrol car to check the VIN and make sure the car wasn't stolen. As I approached the driver side window I observed the driver seat was leaned backward and an African American male was sleeping in it. I called for a backing officer to assist me with making contact with the male.

I knocked on the driver side window to wake the male up. The male heard my knocking and awoke, seemingly dazed. I then observed the male move his left hand down near the driver side door panel and out of my few. I feared the male was possibly reaching for a weapon or concealing something. I gave verbal commands for the male to stop reaching for things in the vehicle. I then observed the male take a set of keys from his lap, making a motion to place the key into the ignition. I feared the male was attempting to start the car and would possibly flee. I attempted to open the driver side door, but it was locked. I gave further verbal commands for the male to not stop the car, and to open the door. The male opened the driver side door, and I asked him to step out to which he did not comply. The male again began reaching with his right hand near the center console. At this point I was again fearful that the male was reaching for a weapon.

Because of the suspicious way the male was acting and not complying with exiting the vehicle, I grabbed his left wrist in an attempt to assist him out. The male immediately tensed up and began pulling his arm in the opposite direction while shaking his head and mumbling no. I continued to give verbal commands to the male to exit, and he still kept trying to pull his arm in the opposite direction. Because of this I used physical force to pull him out of the car and placed him face down on the ground for my safety. Once on the ground the male continued to tense up while his hands were under his body, not visible. Verbal commands were given for him to pull his hands out from under him. The male did not comply, and further physical force was used to get his hands behind his back to place handcuffs on his wrists. Once the male was safely secured, I was advised by Officer Barrett that a pocket knife was located on the driver door arm rest near the area the male was seen to be reaching. Because of this the decision was made to move the male from the immediate area of the vehicle. I attempted to help the male to his side and assist him to his feet but he would not move or speak. The male was asked if he was deaf, mute, or understood English but he did not respond. The male would not move I was forced to physically pick him up with the help of Officer Barrett to get him away from the car.

Once safely away from the vehicle I proceeded with investigating the car.  I was able to locate many notepads with questions written on them which possibly indicated the male was either deaf or mute.  I also located a wallet in the vehicle and found a District of Columbia driver license that identified the male as Kedrick Thruman Randle          .  I asked dispatch to perform names search to locate the status of the DL and any active warrants.  Dispatch advised the DL was valid, and there were no active warrants for his arrest.  I also located a temporary tag in the rear windshield (UT BP46225).  Dispatch advised the vehicle had valid registration under Kedrick's name.  Kedrick continued to be unresponsive and would not speak, make any statements, or answer any questions.

Medical was requested to respond to the location to evaluate him.  Shortly after they arrived and advised me that his vitals were normal and did not need to be transported to the hospital for any reason. (Refer to fire case 18I006497) I continued to investigation the car but did not locate any contraband.  I again attempted to speak with Kedrick and ask him questions but he refused to respond.  The further I investigated it appeared Kedrick was either under the influence of some type of substance, or was suffering from some type of mental illness.  Because of the notepads I had found in his vehicle I asked Kedrick if he could communicate through writing.  He nodded his head yes.  I retrieved a notepad and a marker and took the handcuffs off so he could write.

Kedrick wrote on his notepad that he has a stutter and it is more efficient for him to communicate through writing.  He wrote that he thought I had overreacted to the situation.  I advised Kedrick that when he did not comply with my verbal commands and began reaching in his vehicle I feared for my safety.  He also did not comply with exiting the vehicle and resisted when I grabbed his wrist to control him for my safety.  I advised him that because of his actions physical forced was necessary to control him for my safety.  Kedrick wrote that he had a fracture in his right leg that prevented him from being mobile.  I asked Kedrick if he was under the influence of any substances.  He wrote that he was not, and that he was not impaired.  Kedrick could not walk on his own, could barely sit up, and was acting very lethargic.  He stated he was simply tired.

Officer Action

Ultimately it was decided that Kedrick was possibly suffering from some type of mental disability.  It was also apparent that he was in no condition to drive a vehicle as he could barely stand.  Several options for a solution to the problem were discussed and ultimately it was decided Kedrick would be allowed to sleep in his vehicle for the night.  I was advised that permission was given by Mall Security for him to stay in the lot for the night.

Conclusion

I provided Kedrick a case number and advised him to contact police with any further questions.  This report is information only at this time.

Disposition

This case is closed.

**Response to Resistance**

I observed a suspicious vehicle parked in the lot of the Mall well past business hours.  The vehicle did not have a license plate and was parked in a suspicious

02/28/19

manner.  I also observed a sleeping male in the vehicle.  Upon making contact with the occupant of the vehicle the male began reaching in the vehicle placing his hand out of my view.  Based on my training and experience suspects that act in this manner pose a significant risk for officer safety.  It was not known whether or not the male was reaching for a weapon or concealing an item.  The male then refused to comply with my commands exit the vehicle.  Because of all these factors I used physical force to pull him out of the vehicle, place him on the ground, and place him under arrest.

## Supplement

Barrett 8569
07/17/2018
18I013267 Supplemental
Disorderly, mental subject/Closed

On July 17, 2018 at 0228 hours, I was working a uniformed patrol shift in a marked patrol vehicle when went to back Officer Parker who was out with an attended, suspicious person in a vehicle at the mall.

I stopped my patrol vehicle in front of the suspect's car in case he tried to pull forward and leave, then exited my vehicle and activated my BWC.

I could hear Officer Parker telling the driver not to reach for things. I reached the passenger door and tried to open it to see if I could take something out of the reach of the suspect, later identified as Kendrick Randle, I found the door locked. I heard Officer Parker telling the Kendrick to come out of the car, I saw the Kendrick was not moving, I went to Officer Parker's side.

I heard Officer Parker ask Kendrick to step out of the car again, the Kendrick shook his head no, he did not speak.

I heard Officer Parker tell Kendrick if he didn't come out of the car, he would make him. Kendrick shook his head no again. I asked Officer Parker if he wanted me to take on of Kendrick's arm to help him removed him from the car, he said, yea.

I helped take hold of Kendrick's left hand and pulled him from the driver's seat of the car and placed him face down in the parking lot. Kendrick then folded both of his arms under his chest. I pulled on his left arm, he would not allow me to pull his arm out. I gave him a command to pull his arms out, he did not speak and held his arms under him. I took hold of his left wrist with both of my arms and with some effort, pulled his left out from under him and placed it behind his back. I then saw Officer Parker had pulled Kendrick's right out from under his body, he then handcuffed him.

We ordered Kendrick to roll over, he did not move or respond. I saw a folded knife on the driver's door next to the window controls. I suggested to Officer Parker we move him away from the car, he agreed. Kendrick refused to move. We moved him to the front of Officer Parker's car. Kendrick again refused to sit up and opted to lay down on his side. Under Kendrick's body were the keys to his car and a notepad.

I called for a supervisor to come to the scene due to our use of force.

I monitored Kendrick as he lay on the parking lot, he was breathing regularly and seemed to be calm. I continued to ask him questions, he refused to answer.

I called for paramedics to come and evaluate Kendrick, they did and found all of his vital signs to be normal, blood sugar was normal, they advised Kendrick was just being obstinate as he also refused to talk to them.

I had thought it was possible that Kendrick might be deaf as the notebook turned out not to belong to Officer Parker, but he would shake his head no when asked some questions.

I found Kendrick's behavior to be strange, as he was non-communicative. I have dealt with deaf and mentally impaired subjects in my career and found those who

02/28/19

were sober to want to communicate with me and we find a way to make that work.

As Kendrick refused to sit up, hold himself up, attempt to walk or move, I believed him to be more impaired than physically or mentally disabled.

After Kendrick began writing some responses, I asked him if he took medications for pain for his knee. He wrote he could not take them and operate or drive his car. I asked him pointedly many times if he had taken pain medications, he refused to answer that question. He wrote to me at one point he had been released from Jordan Valley Hospital recently for back pain, while I called the hospital to verify that, he wrote that I could find his hospital release paperwork in a small bag in his car. I found that back and paperwork that stated he had been released on 7/16/18, and that he was prescribed Oxycodone for his pain. I gave this information to Officer Parker.

This report is completed.

## Supplement

18I013267 Supplemental Report, J. Wyckoff 8255

On July 17, 2018 at approximately 0230 hours, I was asked to respond to the east side of the Valley Fair Mall, near the Megaplex, regarding a Use of Force. My BWC was activated and I recall the following from memory.

I arrived and initially met with Officer Barrett standing near a Police vehicle. I also saw a man lying on the ground, on his side, and not moving. Officer Barrett explained the circumstances on the use of force, and why the man continued to lay on the ground. The man did not want to get up, did not want to speak to us, and made no indication he needed help. Medical was called and en-route, but had not arrived. I tried to speak with the man, possibly Randall, but he wouldn't respond to anything I said. I repeated we wanted to help him, but he needed to help us as well. It was frustrating to not even get a nod or a verbal response.

I then spoke with Officer Parker who explained the initial response regarding this suspicious vehicle, the possibly impaired man, how the man resisted, and what crimes the man would be charged with. Initially Officer Parker told me this case was leading towards impairment. The vehicle would be inventoried and then impounded. I helped Officer Parker carry Randall over to the Patrol vehicle but suggested we stop the inventory until we figure out the impairment. Randall couldn't stand on either foot and Officer Parker and I had to pick Randall up and carry his full body weight. We struggled to seat him in the backseat of the Police car.

As we continued to investigate this case, I was unsure Randall was impaired. Randall couldn't communicate other than answering questions through the use of writing notes. Randall would not answer questions regarding medication taken today. Randall's right knee was fractured. Randall didn't want to go to a Hotel or the VOA. Randall wanted to leave in his car. Randall wanted each of our names and badge numbers. Randall wanted our first names, but we did not give him first names. Randall wrote multiple times he was not impaired. Randall had no family, friends or people he could call to assist him.

Both Officer Parker and spoke at length regarding the best decision for this case. We spoke about booking into jail, just so we have Randall go through the process to be released. We had indications of impairment so this was an option. Officer Parker had indications of impairment, but then the vehicle would be impounded, and Randall has no family or someone to release him to, so Randall would be taken to jail.

We discussed using discretion and transporting Randall to a safe place such as VOA, as we felt Randall could not drive safely drive his vehicle. Randall couldn't even walk, let alone drive a car and try to manipulate the gas pedal when his right leg and foot didn't work. We assumed this because Randall couldn't move for us and couldn't walk to the car.

I located Valley Fair Mall security and was given permission from Christopher Johnson, we could leave Randall's vehicle in the parking lot overnight.

As Officer Parker and I spoke, I thought it was best to not book Randall into jail, leave Randall with his vehicle and complete this information report. Randall does need help but as we discussed, no options were available to help Randall at this time in the morning. Officer Parker also thought this would be best.

For more information, see other reports.

NFD
J. Wyckoff